## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Brianna Castelli, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.: 1:24-cv-04574 |
| | ) | Honorable Jeremy C. Daniel |
| JSN NETWORK, INC. and MCHENRY | ) | |
| DONUTS, INC. D/B/A DUNKIN' DONUTS | ) | |
| AND BASKIN ROBBINS, | ) | |
| Defendants. | ) | |

**DEFENDANT MCHENRY DONUTS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(4) and 12(b)(5) AND ADDITIONALLY AND ALTERNATIVELY 12(b)(6)**

NOW COMES Defendant, MCHENRY DONUTS, INC. ("McHenry"), by and through its attorneys, Koehler Dinkel LLC, and pursuant to Federal Rules of Civil Procedure 12(b)(4) (insufficient process) and 12(b)(5) (insufficient service of process), and alternatively and additionally 12(b)(6) (failure to state a claim), hereby moves the Court for an Order dismissing Plaintiff's Amended Complaint in its entirety[1]. McHenry Donuts submits this Memorandum of Law in Support of its Motion to Dismiss, filed simultaneously herewith.

### **INTRODUCTION**

In this case, Plaintiff has repeatedly failed to follow the Federal Rules of Civil Procedure, most recently in her attempts to serve McHenry. On June 3, 2024, Plaintiff filed her original Complaint against Defendants JSN Network, Inc. ("JSN") and McHenry. On or about June 5, 2024, Plaintiff provided a waiver of service to Defendant JSN Network. As shown on the docket, JSN signed and returned the waiver of service on or about June 25, 2024, which was filed with the Court on June 26, 2024. ECF No. 5. On July 30, 2024, Plaintiff's counsel complained that "McHenry Donuts have [sic] never signed a waiver and is in default." ECF No. 14-1, PageID#:65.

---

[1] The Court previously granted McHenry leave to file its Memorandum of Law in Support of its Motion to Dismiss in excess of the 15-page limit, up to 23 pages. ECF No. 41.

**Exhibit 1**.[2] When the undersigned counsel was retained, on August 1, 2024, she advised Plaintiff's counsel of the lack of receipt of a waiver for McHenry and stated that she was authorized to accept a waiver on behalf of McHenry. *Id.* However, Plaintiff's counsel refused—assumingly due to the additional time for filing an answer as he opposed JSN's motion for an extension of time in simultaneous correspondence. ECF No. 14-1, PageID#48-50.

A few days later, on August 5, 2024, Plaintiff filed with the Court an unstamped, unsigned summons addressed to McHenry at its Registered Agent's address. ECF No. 13. On August 6, 2024, the Court noted that Plaintiff erroneously filed this summons as a motion to enforce IRS summons even though the document was not an IRS summons, and denied the motion as filed. ECF No. 15. As the docket shows, despite this case having been filed nearly 6 months ago, at no time has Plaintiff properly requested a summons from the clerk of the court.

Despite Plaintiff's complaints in various filings that McHenry had not returned a waiver and/or has not appeared (and despite Plaintiff's improper filing of a "summons" for McHenry on the docket on August 5, 2024), McHenry had not received a summons or a waiver of service. For the first time, well after the 90-day service period had expired on September 1, 2024, Plaintiff attempted to serve McHenry but failed to do so properly. On or about November 4, 2024, a process server served an individual named Ashir Aziz with an unsigned, unstamped summons with Plaintiff's original Complaint and Amended Complaint. *See* Exhibit 2, Declaration of Ashir Aziz at ¶¶1 and Dec. Ex. A. The summons was addressed to: MCHENRY DONUTS, INC, Agent Information: Suresh Patel, 485 S. Rand Rd, Lake Zurich, IL 600647-2358 [*sic*]. *Id.* The summons served on November 4, 2024, was not signed or sealed by the Clerk of Court, as required by Rule

---

[2] Even assuming a waiver was received, which it was not, an alleged failure to return a waiver of service does not result in default. *See* ECF No. 5. *See Demetropoulos v. Culver's Frozen Custard*, No. 08-cv-0420, 2009 U.S. Dist. LEXIS 135167 (E.D. Wis. Apr. 24, 2009). Here, Plaintiff had an express opportunity to avoid service and also avoid this motion, when undersigned counsel advised that she could accept a waiver on McHenry's behalf. **Exhibit 1**.

4(b).[3] *Id.* Furthermore, Plaintiff failed to serve the summons and complaint on a proper agent with actual authority to accept service on behalf of McHenry, as required by Rule 4(h)(1)(B).[4] *See* ECF No. 34. Mr. Aziz is not employed by McHenry Donuts, does not work at or perform work for McHenry Donuts, nor was he even served at McHenry's location, and is not employed by McHenry's Registered Agent (Suresh Patel) individually.[5] *Id.* at ¶¶1-6. As a result of Plaintiff's failure to properly and timely serve McHenry, Plaintiff's Amended Complaint must be dismissed pursuant to Rules 12(b)(4) and 12(b)(5), as the Court lacks jurisdiction over McHenry Donuts, Inc.

Although the lack of jurisdiction due to insufficient service and insufficient service of process are each individually dispositive and require dismissal, additionally, and in the alternative, Plaintiff's Amended Complaint must be dismissed pursuant to Rule 12(b)(6) because Plaintiff fails to state a claim. Specifically, McHenry moves to dismiss Plaintiff's Amended Complaint for the following reasons: (1) Plaintiff fails to state a claim for retaliatory discharge as pled in Counts I and II; (2) Plaintiff fails to state a claim for retaliation under the FMLA as pled in Count III; (3) Plaintiff fails to state a claim for interference under the FMLA as plead in Count IV; (4) Plaintiff's demands for emotional distress damages as requested in Counts III and IV must be dismissed as these types of damages are not recoverable pursuant to the FMLA; and (5) to the extent Plaintiff's claims fail, her class allegations must be dismissed accordingly. Thus, for these reasons, as further supported below, Plaintiff's Amended Complaint should be dismissed in its entirety, with prejudice. *See* ECF No. 31: "No further amendments shall be allowed absent exceptional circumstances."

---

[3] Fed. R. Civ. P. 4(b) states: "If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant."
[4] Fed. R. Civ. P. 4(h)(1)(B) provides that unless a waiver has been filed, a domestic corporation must be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process…"
[5] McHenry is located at 4502 Elm Street, McHenry, Illinois 60050. ECF No. 32 ¶8.

## **ARGUMENT**

### I. **MCHENRY MUST BE DISMISSED PURSUANT TO FRCP 12(b)(4) and 12(b)(5).**

A defendant may move to dismiss a case for insufficient process under Rule 12(b)(4) and insufficient service of process under Rule 12(b)(5). *MacKey v. Ahmed*, No. 21-cv-01490-NKR, 2024 U.S. Dist. LEXIS 54261, *4 (S.D. Ill. Mar. 26, 2024). Motions made under Rules 12(b)(4) and 12(b)(5) challenging process and service of process have the same standard of review as Rule 12(b)(2) motions for lack of personal jurisdiction because valid service of process is necessary to assert personal jurisdiction over a defendant. *Mid-Continent Wood Products, Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991). Only proper service vests a district court with personal jurisdiction over a defendant. *Cardenas v. City of Chicago*, 646 F. 3d 1001, 1005 (7th Cir. 2011). Thus, "actual knowledge of the existence of a lawsuit is insufficient to confer personal jurisdiction over a defendant in the absence of valid service of process." *Mid-Continent*, 936 F.2d at 301; *Paulsen v. Abbot Laboratories,* 368 F.Supp.3d 1152, 1163 (N.D. Ill. 2019) (service requirement is not satisfied merely because the defendant is aware that he has been named in a lawsuit or has received a copy of the summons and the complaint). Once a defendant challenges the sufficiency of process or service of process (thereby challenging personal jurisdiction), Plaintiff bears the burden to make a *prima facie* showing proper service. *Purdue v. Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Luxottica Group S.p.A v. P'ships and Uninc. Assoc. Identified on Schedule "A,"* 391 F. Supp. 3d 816, 821 (N.D. Ill. 2019); *Trytko v. US Bank Home Mortg.*, Case No. 17-cv-175-JD-MGG, 2018 U.S. Dist. LEXIS 145397, at *10-11 (N.D. Ind. Aug. 10, 2018). Without sufficient process and valid service of process, actual knowledge of the existence of a lawsuit, or receipt of the complaint and (insufficient) summons, does not provide the Corut with personal jurisdiction over a defendant. *Mid-Continent*, 936 F.2d at 301.

### A. **PLAINTIFF LACKS PERSONAL JURISDICTION OVER MCHENRY DUE TO INSUFFICIENT PROCESS.**

Rule 12(b)(4) motions challenge the form of process, testing matters such as "**whether the summons bore the seal of the court, was signed**, or was addressed to the proper party." *Luxottica Group*, 391 F. Supp. 3d at 821 (citing *O'Brien v. O'Brien & Assoc., Inc.* 998 F.2d 1394, 1399-1400 (7th Cir. 1993)) (emphasis added). Deficiencies under Rule 12(b)(4) include "errors in naming the proper defendant, failing to specify the number of days allotted for defendant to answer, and **failure to obtain a court seal or signature**." *Demetropoulos v. Culver's Frozen Custard*, No. 08-cv-0420, 2009 U.S. Dist. LEXIS 135167 *2-3 (E.D. Wis. Apr. 24, 2009) (emphasis added).

Fed. R. Civ. P. 4(b) requires that a properly completed summons must be signed, sealed and issued by the clerk of court to the plaintiff for service on the defendant. However, Plaintiff's November 4, 2024, summons addressed to McHenry contains no seal, signature, and no date from the Clerk of Court, which constitutes a clear violation of Rule 4(m) resulting in a required dismissal pursuant to Rule 12(b)(4). *See* Exh. 2 and Dec. Ex. A. Without the requisite seal or signature of the court's clerk, the summons is insufficient, Plaintiff fails to meet her burden of establishing that the Court has personal jurisdiction over McHenry and her Amended Complaint is ripe for dismissal under Rule 12(b)(4). Further, it is clear from the docket that no proper summons was sought or issued by the clerk in this case, or it would be noted by the clerk on CM/ECF system docket. The summons contained in the deficient November 4th service, is the same deficient summons that was filed improperly on the docket by Plaintiff's counsel on August 5, 2024. ECF No. 13. Thus, McHenry must be dismissed due to a lack of jurisdiction.

## B. PLAINTIFF LACKS PERSONAL JURISDICTION OVER MCHENRY DUE TO INSUFFICIENT SERVICE OF PROCESS.

Rule 12(b)(5) motions challenge the sufficiency of the manner in which the process was served. *Luxottica*, 391 F. Supp. 3d at 821. When presented with a defect in service of process under

Rule 12(b)(5), a district court must first inquire whether the plaintiff had good cause for failing to perfect service. *Doffin v. Ballas,* Case No. 12-cv-441, 2013 WL 3777231 (N.D. Ind. July 18, 2013). In this context, good cause means a valid reason for delay, such as the defendant evading service, which did not occur in this matter. *Id.*

After commencing a suit, a plaintiff is required to ensure that each defendant receives a summons and a copy of the complaint filed against it. *Innovative Fabrication, LLC. v. ECI Software Solutions, Inc.,* Case No. 19-cv-521-JMS-TAB, 2019 WL 5448282, *2 (S.D. Ind. October 24, 2019) (citing Fed. R. Civ. P. 4(b), (c)(1)) (finding that "[t]he Rules of Civil Procedure are important, and they are not optional[,]" and granting motion to dismiss pursuant to Rule 12(b)(5) for a failure to timely serve). Rule 4(m) governs the time in which process must be served on a defendant. This rule provides in pertinent part "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "These service requirements provide notice to the parties, encourage parties and their counsel to diligently pursue their cases, and trigger a district court's ability to exercise jurisdiction over a defendant." *Cardenas,* 646 F.3d at 1005; *Geiger v. Allen*, 850 F.2d 330, 332 (7th Cir. 1988) ("Rule 4(j) [now 4(m)] applies equally to defendants who were never served and defendants who were served after the 120-day [now 90-day] period has lapsed.").

On June 3, 2024, Plaintiff filed her original Complaint against Defendants JSN and McHenry.[6] ECF No. 3. Plaintiff had 90 days or until September 1, 2024, to perfect service on

---

[6] On October 22, 2024, the Court granted Plaintiff's oral Motion for Leave to File an Amended Complaint. ECF No. 31. Plaintiff filed her Amended Complaint on October 28, 2024. ECF No. 32. This is after Plaintiff improperly attempted to file an amended complaint simultaneously with her written Motion for Leave on September 27, 2024. ECF Nos. 21-22. The Court denied the written Motion for Leave and struck the accompanying amended complaint on October 8, 2024, and at the time admonished Plaintiff for numerous other procedural errors. ECF No. 25.) The October 28, 2024, Amended Complaint does not resolve Plaintiff's failure to properly serve McHenry Donuts pursuant to Federal Rule of Civil Procedure 4(m).

McHenry. Fed. R. Civ. P. 4(m). Plaintiff also had the option within the 90-day period to request a waiver of service pursuant to Rule 4(d). On or about June 5, 2024, Plaintiff provided a waiver of service to JSN, which JSN signed and returned the waiver of service on or about June 25, 2024. ECF No. 5. As explained above, despite an offer to accept a waiver of service for McHenry, Plaintiff failed to seek waiver and/or serve a summons on McHenry within the 90-day deadline. Although Plaintiff improperly filed an incomplete summons on the docket on August 5, 2024, she waited another 3 full months before attempting service. As the docket shows, Plaintiff also failed to even request a proper summons on McHenry at any time since this action was filed in June 2024. Furthermore, Plaintiff never sought an extension of time to effect service. *See Troxell v. Fedders of North America, Inc.,* 160 F.3d 381, 383 (7th Cir. 1998) (affirming grant of motion to dismiss where the plaintiff failed to effect service within the time set forth in Rule 4(m) and affirming the district court's refusal to extend time to effect service); *Walton v. The Bureaus, Inc.,* Case No. 03-C-3523, 2004 WL 421736 (N.D. Ill. February 19, 2004) (granting the defendants' motion to dismiss the complaint and entering final judgment in defendants' favor where the plaintiff failed to timely serve process within the extended time period).

Moreover, there is no good cause for Plaintiff's failure to properly serve McHenry for several reasons. First, Plaintiff's failure to properly serve McHenry is inexcusable based on Plaintiff's ability to request a waiver of service within the 90-day timeframe—especially after being invited to send a waiver to easily correct any prior lack of receipt of a waiver. It is undisputed that McHenry did not attempt to evade service. All information regarding where and to whom to properly serve McHenry, is available on the Illinois Secretary of State's website (*see* **Exhibit 3**[7])—

---

[7] *See Carter v. Sturgeon*, 643 F. Supp. 3d 862, 865 (N.D. Ind. 2002) (permitting district courts to "take judicial notice of outside matters of public record in a motion to dismiss if they are not subject to reasonable dispute and either generally known within territorial jurisdiction or capable of accurate and ready determination through sources whose

which Plaintiff clearly knew about given that her "IRS summons" court filing on August 5, 2024, included the correct address for McHenry's Registered Agent, as listed on the Secretary of State's website. ECF No. 15; *see also Powell v. Starwalt,* 866 F.2d 964 (7th Cir. 1989) (finding that the plaintiff did not show good cause for delay in service due to his attorney's inadvertence in serving the defendant); *Tso v. Delaney,* 969 F.2d 373, 376 (7th Cir. 1992) (finding that simple attorney neglect, without more, cannot serve as the basis for a finding of good cause). Notably, Plaintiff's counsel made repeated statements on record expressing frustration that Plaintiff never received a waiver from McHenry Donuts (which, of course, McHenry Donuts never received from Plaintiff) and/or that McHenry had not yet appeared (despite still never seeking a proper summons and making no attempts to serve until 6 months after the action was filed). ECF Nos. 14, 21. Clearly, Plaintiff did not intend to seek an extension to effect service nor had any cause of delay besides her or her counsel's own negligence—including, but was not limited to, Plaintiff's botched attempts in filing a summons for McHenry as a motion to enforce an IRS summons (ECF No. 15) and serving McHenry with a defective summons long after the 90-day deadline had expired.

In short, Plaintiff had 90 days from filing her original Complaint to serve McHenry. Plaintiff's service on November 4, 2024, of McHenry—moreover, of a summons that was not even signed, sealed, or dated by the Clerk of Court—was 64 days past the deadline set forth pursuant to Rule 4(m) and 154 days[8] since Plaintiff filed her original Complaint. Due to Plaintiff's blatant disregard of the rules, McHenry respectfully requests this Honorable Court to dismiss it from this action pursuant to 12(b)(5) for Plaintiff 's failure to serve it within 90 days of filing her complaint.

_____

accuracy cannot be questioned" (citing *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) and *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012)) (internal quotations omitted).

[8] On Friday, November 22, 2024, Plaintiff's counsel emailed McHenry's counsel asking if counsel would (for the first time) accept a waiver of service—82 days after the Rule 4(m) period expired. However, given the history outlined herein and as shown on the docket regarding prior procedural errors, the untimeliness, and the fact that McHenry is ripe for dismissal due to a lack of jurisdiction, not to mention that McHenry had already gone to the expense of preparing the instant motion, McHenry moved forward with filing the instant motion.

*See Segura v. White Lodging Services Corp.*, No. 19-cv-405, 2019 WL 5894227 (E.D. Wis. Nov. 12, 2019) (granting motion to dismiss pursuant to Rule 12(b)(5) for untimely service of complaint); *Cardenas,* 646 F.3d at 1008 (affirming dismissal *with prejudice* where plaintiff did not comply with FRCP 4(m)). *See also Troxell,* 160 F.3d at 383 (finding that plaintiff was largely to blame for the late service and therefore affirmed trial court's denial for an extension of time to serve defendant); *Tuke v. United States*, 76 F.3d 155, 156 (7th Cir. 1996) ("[f]ailure to read a rule is the antithesis of good cause.")

### C. PLAINTIFF'S DEFECTIVE SUMMONS WAS SERVED ON AN INDIVIDUAL WHO IS NOT A PROPER AGENT FOR SERVICE, AMOUNTING TO INSUFFICIENT SERVICE OF PROCESS.

In addition to the above dispositive reasons why the Court lacks personal jurisdiction over McHenry in this matter, providing yet another reason why the Court lacks jurisdiction, McHenry must be dismissed as a defendant in this case because Plaintiff served her defective summons on an individual who is not a proper agent of service under the Federal Rules of Civil Procedure. Service on a corporation is valid when it complies with Federal Rule of Civil Procedure 4(h), which states that service shall be effected: (1) in a judicial district of the United States in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(h). Additionally, Rule 4(e)(1) allows service to be effected "pursuant to the law of the state in which the district court is located[.]" Fed. R. Civ. P. 4(e)(1). Under Illinois law, service may be had on a private corporation "by leaving a copy of the process with its registered agent or any officer or agent found anywhere in the State[.]" 735 Ill. Comp. Stat. 5/2-204.

Publicly available business entity information found on Illinois Secretary of State website shows that the registered agent of McHenry is Suresh Patel, to whom Plaintiff also addressed her

defective summons. *See* Exhs. 2 and 3. Despite knowing who the registered agent of McHenry is, Plaintiff failed to serve that registered agent and thereby failed to serve McHenry. As stated above, on or about November 4, 2024, a process server served an individual named Ashir Aziz with an unsigned, unstamped summons with Plaintiff's original Complaint and Amended Complaint. *See* Exhibit 2, Aziz Dec. at ¶¶1-6 and Dec. Ex. A. Mr. Aziz is not employed by McHenry Donuts, does not work at nor perform work for, nor was he even served at McHenry's location, and is not employed by McHenry's Registered Agent individually.[9] *Id.* As a result of Plaintiff's failure to properly and timely serve McHenry with her Complaint, Plaintiff's Amended Complaint must be dismissed pursuant to Rules 12(b)(4) and 12(b)(5), as the Court lacks jurisdiction over Defendant McHenry Donuts, Inc. Mr. Aziz who is not an officer or managing or registered agent (or even an employee) of McHenry under Rules 4(h) or 4(e)(1), and thus is not an individual who could accept service for McHenry. *See e.g.*, *Smothers v. Circle K Stores, Inc.*, No. 23-cv-3528-DWD, 2024 U.S. Dist. LEXIS 23604 (S.D. Ill. Feb. 9, 2024); *Mason v. Freeman Nat'l Printing Equip. Co.*, 51 Ill. App. 3d 581 (1st Dist. 1977); *Coleman v. Carrington Mortgage Services, LLC*, No. 4:19-CV-0231-ALM-CAN, 2019 U.S. Dist. LEXIS 222212, *12-13 (E.D. Tex. Dec. 3, 2019) (granting motion to dismiss where the individuals served were not officers, managing or general agents, or authorized or registered to accept service on behalf of the defendant).

District Courts in the Seventh Circuit read 4(h)(1) to require that an agent have actual authority to receive service of process for that service to be valid. *U.S. v. Norden Enterprises, LLC.*, 01-C-8968, 2002 WL 1632633, *2 (N.D. Ill. July 22, 2002) (citing *Hunter Douglas Metals v. Aluminio Conesa, S.A. de C.V.*, Case No. 96-C-6853, 1997 U.S. Dist. LEXIS 7344, *25-28 (N.D. Ill. May 15, 1997)). In *Norden*, the Court found that service upon an employee of a corporation

---

[9] McHenry is located at 4502 Elm Street, McHenry, Illinois 60050. ECF No. 32 ¶8.

was improper because the individual was not an officer or registered agent of the corporation at the time of service, and therefore did not have actual authority to receive service of process for that service to be valid. *Norden*, 2002 WL 1632633, *2. Here, Plaintiff served the summons— moreover, an unsealed, unsigned summons delivered well after the 90-day deadline—on an individual who is not even an employee of McHenry. Thus, similar to the court's finding in *Norden*, Plaintiff did not effect service when the special process server delivered the (defective) summons to this individual. *Id*. For this and all of the other reasons enumerated above, McHenry respectfully requests that the Court to dismiss it from this action pursuant to Rules 12(b)(4) and 12(b)(5) for insufficient process and insufficient service of process.

## II.     ADDITIONALLY, AND IN THE ALTERNATIVE, PLAINTIFF'S AMENDED COMPLAINT MUST BE DISMISSED PURSUANT TO FRCP 12(b)(6).

Although the failure to properly and timely serve McHenry is dispositive in this matter, as the Court lacks jurisdiction over McHenry, should the Court decline to dismiss McHenry as a defendant on this basis, Plaintiff's Amended Complaint must be dismissed on the additional and alternative grounds pursuant to Rule 12(b)(6). McHenry adopts the arguments set forth in JSN's Motion to Dismiss and corresponding Memorandum of Law (ECF Nos. 35-36) and reiterates such below.

### A.     COUNT I FOR RETALIATORY DISCHARGE MUST BE DISMISSED AS PLAINTIFF FAILS TO STATE A VALID CAUSE OF ACTION.

In order to state a valid cause of action for retaliatory discharge under Illinois common law, an employee must plead that (1) she was discharged, (2) in retaliation for her activities, and (3) the discharge violated a clear mandate of public policy. *Teruggi v. CIT Group/Capital Fin., Inc.*, 709 F.3d 654, 661 (7th Cir. 2013). As to the third element, the Illinois Supreme Court has stated that "public policy" concerns "what is right and just and what affects the citizens of the State

collectively." *Rowe v. U.S. Bancorp*, No. 11-cv-4015, 2012 WL 733859, at *6 (C.D. Ill. Mar. 6, 2012) (citing *Palmateer v. Int'l Harvester Co.*, 85 Ill.2d 124 (1981)).

First, Plaintiff fails to show that she was discharged in retaliation for her activities. In her Amended Complaint, Plaintiff alleges that she "was terminated after she requested a leave of absence." ECF No. 32 ¶53. However, in Count I Plaintiff inconsistently concludes without any factual support that "[a]fter Plaintiff complained about JSN denying its employees benefits, Defendants fired Plaintiff and terminated her employment[.]" *Id.* at ¶100. Not only are these allegations inconsistent, but Plaintiff also fails to plead sufficient facts to show that McHenry terminated her employment or that any alleged termination was in retaliation for *any* protected activity regarding McHenry. Plaintiff pleads no facts as to which defendant she complained to, to whom she complained, when, what she complained about, etc.

Second, Plaintiff fails to show that her alleged discharge by "Defendants" violated a clear mandate of public policy—the absence of which element warrants dismissal. Plaintiff states in vague and non-specific terms, without any supporting citation, that "[a] corporation's obedience to state and federal labor law is a clearly mandated public policy in Illinois" (ECF No. 32 ¶84) and that Plaintiff "demanded that all Defendants' employees, including Plaintiff, be afforded all employment rights under Illinois and federal labor laws" (ECF No. 32 ¶98). However, nowhere in this Count does Plaintiff state with any specificity *which* state and/or federal labor laws McHenry allegedly violated, let alone which laws Plaintiff put it on notice of allegedly violating and how. Together, the U.S. and Illinois Departments of Labor administer and enforce hundreds of federal and state labor laws and regulations.[10] Without stating *which* of these laws constitute the basis for

---

[10] U.S. Dept. of Labor, *Summary of the Major Laws of the Department of Labor*, DOL.gov, https://www.dol.gov/general/aboutdol/majorlaws (last visited Nov. 12, 2024); Ill. Dept. of Labor, *Laws and Rules*, Labor.illinois.gov, https://labor.illinois.gov/laws-rules.html (last visited Nov. 12, 2024).

a clearly mandated public policy in Illinois, Plaintiff simply fails to allege—let alone, sufficiently allege—factual allegations needed to state a cause of action of retaliatory discharge.

Further, Plaintiff's case law does not support her claim for retaliatory discharge whether related to her FMLA allegations or her generalities regarding employment law violations. [11] Plaintiff cites to *Johnson v. World Color Press*, 147 Ill. App. 3d 746 (1986), in which the Appellate Court reversed a dismissal of a retaliatory discharge claim. ECF No. 32 ¶86. However, in *Johnson*, the plaintiff pled very specific allegations regarding alleged misuse of company funds/financial issues, which the court found if true, would result in a violation of applicable federal security laws. Thus, in reversing the dismissal, the Appellate Court found that "public policy favored and in certain instances statutes required, full disclosure, truthfulness, and accuracy in financial reports made by businesses to the government and to the public[.]" *Id.* at 750. Again, here, Plaintiff pleads no specifics in her Amended Complaint as to the basis for her claim (including that McHenry terminated her employment), what forms the underlying public policy, and how it affects the citizens of the State collectively (and not just *her* employment relationship).

Further, given that Plaintiff incorporates her allegations in paragraph 1-79, which relate to and also allegedly form the basis of her FMLA claims in Count III and IV, and also repleads numerous allegations specific to her FMLA claim (including allegations necessary for FMLA eligibility (*see, e.g.*, ECF No. 32 ¶¶89-97)) into Count I, it is proper to assume that the alleged

---

[11] *See e.g.*, *Brandon v. Anesthesia & Pain Mgmt. Assocs.*, 277 F.3d 936, 942 (7th Cir. 2002) (involving public benefits fraud); *Bourbon v. Kmart Corp.*, 223 F.3d 469, 472 (7th Cir. 2000) (affirming motion for summary judgment in favor of employer and finding that employee failed to state a claim for retaliatory discharge where employee's reporting of his supervisor's alleged acts of charging customers for unnecessary automobile repairs was not causally linked to employee's termination); *Moldenhauer v. Tazewell-Pekin Consol. Commun. Ctr.*, 536 F.3d 640 (7th Cir. 2008) (affirming summary judgment for employer on the issue of what is a joint employer under the FMLA, not evaluating a retaliatory discharge claim); *Papa v. Katy Indus.*, 166 F.3d 937 (7th Cir. 1999) (affirming summary judgment for employer, evaluating application of "few employee" exception under discrimination laws, including Title VII, and finding that factors were not present to "pierce the corporate veil"—this case does not address the FMLA nor a retaliatory discharge claim).

violations of "labor laws" really again refer to the FMLA. Assuming Plaintiff is again trying to base Count I on an alleged violation of the FMLA, such a claim fails. *See e.g.*, ECF Nos. 17-18. The one arguably comparable case cited by Plaintiff, *Sutherland v. Norfolk S. Ry. Co.*, in fact supports the granting of McHenry's Motion to Dismiss Count I, since the *Sutherland* court affirmed dismissal of a retaliatory discharge claim, finding that the railroad employee's report to the railroad that he was injured as a result of a broken locomotive cab chair did not affect the citizens of the State collectively. *Sutherland v. Norfolk S. Ry. Co.*, 356 Ill. App. 3d 620 (1st Dist. 2005). Similarly, here, Plaintiff's claims surrounding alleged general employment law violations and/or the FMLA are personal and do not affect the citizens of the State collectively.

Additionally, case law from this District involving situations where a plaintiff attempted to bring a retaliatory discharge claim based on alleged violations of the FMLA establishes that courts routinely dismiss such claims. Specifically, courts within this District generally hold that "a retaliatory discharge claim would not be recognized unless there was no other remedy that would vindicate the public policy allegedly contravened. Historically, courts have recognized the claim where the otherwise available remedies would not serve as an effective deterrent to future employer misconduct." *Hamros v. Bethany Homes & Methodist Hosp. of Chicago*, 894 F. Supp. 1176, 1179 (N.D. Ill. 1995). The *Hamros* court determined that "the FMLA provides an employee with a private right of action against an employer who [is] alleged to have violated the [FMLA], and the employee can recover not only lost wages, salary, benefits, and other actual monetary losses, but an additional amount as liquidated damages (i.e., double damages) designed as a punishment to deter the employer from future unlawful conduct." *Id.* As a result of the remedies available under the FMLA and the limited scope of a retaliatory discharge claim, the *Hamros* court granted the employer's motion to dismiss the plaintiff's retaliatory discharge claim stating that

14

"the Illinois Supreme Court would not expand the common law tort of retaliatory discharge to include claims based on the exercise of rights under the FMLA." *Id.* [12] Moreover, following this same reasoning, it is likely that the Illinois Supreme Court would also not expand the common law tort of retaliatory discharge to include claims based on an allegation that a plaintiff was discharged for "claiming that the Defendant employer was subject to state and federal labor laws." ECF No. 32 ¶102.

The vast majority of Plaintiff's allegations asserted throughout the Amended Complaint relate to her personal situation in attempting to seek personal leave pursuant to the FMLA. "If such activities relating to an individual's *personal* health and economic interests were held to implicate public policy, there is no end what common law retaliatory discharge could embrace." *Rowe*, 2012 WL 733859 at *6. Plaintiff is likely aware that a claim for an alleged violation of the FMLA or any other nonspecific violation of employment laws would not implicate public policy; thus, she alleges in Count I that she "complained to Defendant JSN Network that it could not deny its employees benefits under state and federal labor laws." ECF No. 32 ¶98. Aside from their vagueness and lack of specificity, Plaintiff's factual allegations relate to claims allegedly made to JSN and not McHenry and focus on *herself* and neither other employees nor the public as a whole. *See e.g.*, *Bynum v. Bandza*, 2021 WL 6102525, *5-6 (C.D. Ill. Nov. 5, 2021); *Handel*, 2001 WL

---

[12] *Hamros* is not an outlier. Courts within this District consistently rule this way. *See, e.g.*, *Rowe*, 2012 WL 733859 at *6 (granting motion to dismiss retaliatory discharge claim and finding that "the FMLA does not involve matters that strike at the heart of a citizen's social rights, duties, and responsibilities"); *Sallis v. Prime Acceptance Corp.*, 2005 WL 1950661, at *3 (N.D. Ill. Aug. 10, 2005); *Sullivan v. Progressive Cas. Ins. Co.*, 2004 WL 1687123, at *5 (N.D. Ill. July 27, 2004) ("It is improbable that the Illinois Supreme Court would permit a claim for retaliatory discharge based on rights set forth through the FMLA"); *Handel v. Belvedere USA Corp.*, 2001 WL 1286842, at *4 (N.D. Ill. Oct. 22, 2001) ("[T]he FMLA was designed to balance the employer's legitimate interests with the needs of employees in obtaining leave for certain medical conditions and family reasons and, therefore, affects only the private relationship between an employee and an employer"); *Dormeyer v. Comerica Bank-Ill.*, 1998 WL 729591, at *5-6 (N.D. Ill. Oct. 14, 1998) ("Thus, because '[t]he FMLA does not protect Illinois citizens from criminal activity or life-threatening hazards' and 'affects only [the employee's] private relationship with his employer,' claims based on the assertion of rights under the FMLA do not constitute a clearly mandated public policy") (citing *Callazzo v. Office Depot, Inc.*, 1998 WL 111628, * 4 (N.D. Ill. Mar. 6, 1998), *aff'd*, 233 F.3d 579 (7th Cir. 2000)).

1286842 at *4 ("the FMLA was designed to balance the employer's legitimate interests with the needs of employees in obtaining leave for certain medical conditions and family reasons and, therefore, affects only the private relationship between an employee and an employer"); *Dormeyer v. Comerica Bank-Ill.*, 1998 WL 729591, at *5-6 (N.D. Ill. Oct. 14, 1998) ("Thus, because '[t]he FMLA does not protect Illinois citizens from criminal activity or life-threatening hazards' and 'affects only [the employee's] private relationship with his employer,' claims based on the assertion of rights under the FMLA do not constitute a clearly mandated public policy" (citing *Callazzo v. Office Depot, Inc.*, 1998 WL 111628 at * 4 (N.D. Ill. Mar. 6, 1998))), *aff'd*, 233 F.3d 579 (7th Cir. 2000).

McHenry has not located any case law supporting the idea that such broad allegations as alleged in Count I can form the basis of a common law retaliatory discharge claim—especially when employment laws have their own remedies available such as the FMLA—nor do any of the cases cited by Plaintiff. Thus, Count I should be dismissed with prejudice because Plaintiff's amended complaint fails to plead a claim for retaliatory discharge. As stated in *Rowe*, [t]he public is simply not affected by this dispute." *Rowe*, 2012 WL 733859 at *6.

## B. COUNT II FOR RETALIATORY DISCHARGE MUST BE DISMISSED AS PLAINTIFF FAILS TO STATE A VALID CAUSE OF ACTION.

In Count II, Plaintiff repleads a second claim titled as "retaliatory discharge/punitive damages." However, such a claim fails on its face. *See e.g.*, ECF No. 18, pp. 7-8; *see also Simpson v. Saggezza, Inc.,* 2018 U.S. Dist. LEXIS 133740, *12 (N.D. Ill. Aug. 8, 2018) (citing *O'Donnell v. Am. at Home Healthcare & Nursing Servs.*, 2015 U.S. Dist. LEXIS 18585, at *48 (N.D. Ill. Feb. 17, 2015) ("But the Illinois courts have made clear that an employer who discharges an employee for asserting his rights under the IWPCA has not contravened a 'clearly mandated' public policy such that an action for retaliatory discharge is permitted")); *Cichon v. Exelon*, 2002 U.S. Dist.

LEXIS 21228 (N.D. Ill. Oct. 31, 2002) (dismissing common law retaliatory discharge claim based on an alleged violation of the Fair Labor Standards Act and finding that a cause of action for retaliatory discharge was unavailable to a plaintiff who had a remedy under the FLSA); *Jarmoc v. Consolidated Elec. Distribs.*, 1992 U.S. Dist. LEXIS 12717 (N.D. Ill. 1992); *Tombrello v. USX Corp.*, 763 F. Supp. 541, 544 (N.D. Ala. 1991) (common law claims for "wrongful refusal to pay" were "nothing more than claims for wages [which] must be brought under the Fair Labor Standards Act . . . the exclusive remedy for enforcing these rights").

Specifically, Plaintiff alleges that she "complained to Defendants that it could not deny her benefits under the IWPCA" and that Defendants fired her "[a]fter [she] complained about Defendants denying its employees benefits" pursuant to the Illinois Wage Payment and Collection Act ("IWPCA")[13]. ECF No. 32 ¶¶113, 121. However, though she pleads elsewhere that her termination was related to her FMLA-related activities (*see, e.g.,* ECF No. 32 ¶¶ 1-3, 38, 132, 141-42, 153), in Count II Plaintiff pleads that her "discharge was in retaliation for Plaintiff claiming that the Defendants were subject to the laws contained in the IWCPA [*sic*]." ECF No. 32 ¶123. By her citation to the IWPCA (ECF No. 32 ¶111), it appears that Plaintiff is attempting to bypass the state statute (for which she also fails to plead a valid cause of action) and seek remedies that are not available under the IWPCA under a common law claim (such as emotional distress and punitive damages). Given that these allegations mirror the vague allegations in Count I regarding "not following employment laws," Count II should be dismissed for the same reasons.

In addition, Plaintiff fails to plead sufficient facts to establish a common law claim, as she fails to plead that she engaged in any protected activity (other than a vague reference to her

---

[13] Plaintiff also alleges that she "demanded that she be afforded all employment rights under Illinois and federal law." ECF No. 32 ¶114. However, this allegation, as set forth above regarding Count I, fails to state a claim for common law retaliatory discharge.

"demand[] that she" or "all Defendants' employees be afforded all employment rights under Illinois and federal law" (ECF No. 32 ¶¶ 113-115)), that any alleged discharge was in retaliation for such activity, and that any alleged discharged violated any public policy. *Sullivan v. Progressive Cas. Ins. Co.*, 2004 WL 1687123, at *5 (N.D. Ill. July 27, 2004). First, Plaintiff fails to plead a single fact as to when she allegedly complained and to whom she complained. Thus, Plaintiff fails to plead that that she engaged in any protected activity to McHenry that was somehow related to any alleged termination. Second, Plaintiff also fails to plead sufficient facts to establish element three of her retaliatory discharge claim (regarding of which entity effected it)— that the alleged discharge violated a clear mandate of public policy. The Northern District "has recognized that underlying disputes involving wages or payments go toward private economic rights and not public policy." *Sullivan*, 2004 WL 1687123 at *5. Further, "this Court joins the majority of Illinois courts in holding that, where the underlying disputes are primarily economic in nature, a claim for common law retaliatory discharge is not recognized." *Id*. at *6. That is precisely the case here. Plaintiff is seeking alleged "benefits"—and depending on the type of claim, there are various statutory remedies available to Plaintiff. Thus, similar to the above with regarding to Count I, Plaintiff's claim for retaliatory discharge based on a claim for alleged "benefits" is personal and therefore does not involve public policy. Therefore, the Court must dismiss Count II for failure to state a claim for common law retaliatory discharge. *See Dichiarro v. Woodland Maint. Group, LLC,* 196 N.E.3d 654, 662 (2d Dist. 2021) (affirming that there is no basis to bring a common law retaliatory discharge claim for an alleged violation of the IWPCA); *Chicago Commons Ass'n v. Hancock,* 804 N.E.2d 703, 706 (1st Dist. 2004); *McGrath v. CCC Info. Services, Inc.,* 731 N.E.2d 384 (1st Dist. 2000). Count II should be dismissed with prejudice, as these defects were previously brought to Plaintiff's attention in JSN's Motion to Dismiss Plaintiff's Complaint.

To the extent Plaintiff now attempts to plead a statutory claim of retaliation under the IWPCA that is improperly merged with an Illinois common law claim seeking punitive damages, Plaintiff also fails to state a statutory retaliation claim. Unlawful retaliation under the IWPCA occurs when an employer discharges or otherwise discriminates against an employee for complaining "that he or she has not been paid in accordance with the provisions of this Act." *Hughes v. Scarlett's G.P., Inc.*, 2016 U.S. Dist. LEXIS 13886, at *23-24 (N.D. Ill. Feb. 5, 2016); *Baylock v. ACIA AG Auto LLC*, 2022 Ill. Cir. LEXIS 1430, *6 (Cook County, IL Mar. 10, 2022). More specifically, Plaintiff must allege that "[s]he engaged in activity protected under the Act, that [her] employer took an adverse employment action against [her], and a causal link exists between the two." *Dobrov v. Hi-Tech Paintless Dent Repair, Inc.*, Case No. No. 1:20-CV-00314, 2021 WL 1212796, at *8 (N.D. Ill. Mar. 31, 2021). Here, Plaintiff fails to plead any of the necessary elements of IWPCA retaliation, and her claim should be dismissed accordingly.

Plaintiff alleges that she "complained to Defendants that it could not deny her benefits under the Illinois Wage Payment and Collection Act" and that her "discharge was in retaliation for Plaintiff claiming that the Defendants were subject to the laws contained un the IWPCA." ECF No. 32 ¶¶ 112, 124. The IWPCA requires, among other things, that employers pay employees at certain specified times. *See, e.g.*, 820 ILCS 115/3. The IWPCA, however, "mandates payment of wages only to the extent the parties' contract or employment agreement requires such payment." *Hoffman v. Roadlink Workforce Sols.*, LLC, 2014 WL 3808938, at *4 (N.D. Ill. Aug. 1, 2014). Therefore, a plaintiff must show that wages or compensation are due under a valid contract or agreement. *See Palmer v. Great Dane Trailers*, 2005 WL 1528255, at *3-4 (N.D. Ill. June 28, 2005) (dismissing IWPCA claim where no contractual obligation to pay between employer and employee); *Jaramillo v. Garda, Inc.*, 2012 WL 1378667, at *2 (N.D. Ill. Apr. 20, 2012). Plaintiff

fails to allege what "benefits" she complained about or did not receive, that there was a violation of any purported agreement, and one single factual example of how she (or any other employee) has (have) not been actually paid in accordance with the IWPCA. Plaintiff's allegations fail to show that she nor anyone else was not paid in accordance with the IWPCA. As such, Plaintiff fails to state a claim for IWPCA statutory retaliation. *See Baylock*, 2022 Ill. Cir. LEXIS 1430, *6 ("Because there was no employment agreement guaranteeing Plaintiff F&I Manager commission wages, there was no violation of the IWPCA, and thus Defendant did not retaliate against Plaintiff when offering him different positions") (citing *Reid v. Neighborhood Assistance Corp. of America*, 2013 U.S. Dist. LEXIS 35112, at *24 (N.D. Ill. Mar. 14, 2013) (applying Illinois law)); *Wilkinson v. Acxiom Corp.*, 611 F. Supp. 3d 547, 559-560 (N.D. Ill. 2020).

In addition, Plaintiff fails to allege that she engaged in protected activity under the IWPCA. For example, Plaintiff fails to plead to whom she allegedly complained, what she complained about, when she complained, and any response thereto. Resultingly, not only does Plaintiff fail to allege that she engaged in protected activity, but she also fails to plausibly allege that any purported complaint about "benefits" under the IWPCA (ECF No. 32 ¶113), resulted in her alleged separation. In fact, in the factual background portion of her Amended Complaint which is incorporated into Count II at ¶110 and as alleged elsewhere, Plaintiff pleads that she "was terminated after she requested a leave of absence" (ECF No. 32 ¶ 53) without any mention of a complaint regarding "benefits" under the IWPCA. Thus, not only does Plaintiff fail to properly plead a statutory IWPCA claim, she, in fact, pleads herself out of court on this claim (and regarding the common law claim as well).

### C. COUNT III FOR FMLA RETALIATION SHOULD BE DISMISSED AS PLAINTIFF FAILS TO STATE A VALID CAUSE OF ACTION.

In Count III, Plaintiff fails to plead a cause of action for alleged "retaliation" pursuant to

the FMLA. To state a cause of action for FMLA retaliation, a plaintiff must plead that: (1) she is an eligible employee and the employer is a covered employer; (2) she engaged in a statutorily protected activity; (3) the employer took an adverse employment action against the employee; and (4) there is a causal relationship between the protected activity and the adverse employment action. *Sanford v. American Oncology Partners, P.C.,* 2022 U.S. Dist. LEXIS 107460 (S.D. Ind. June 16, 2022); *Pagel v. TIN, Inc.*, 695 F.3d 622, 631 (7th Cir. 2012).

Here, regarding her retaliation claim, Plaintiff fails to plead or even conclude that she was an eligible employee under the FMLA at the time of her leave request. *Sanford*, 2022 U.S. Dist. LEXIS 107460 at *8-14. Second, even assuming for purposes of this motion that Plaintiff properly pleads: (1) that she engaged in protected activity by generally requesting time off work for care for her child and/or taking a leave, and (2) that she was purportedly terminated, Plaintiff fails to plead sufficient factual allegations (and not conclusory statements) to show that her purported termination[14] was *causally connected* to her request for leave or the actual leave in a manner that would give rise to a retaliation claim. *See, e.g. Ryan v. Pace Suburban Bus Division of the Reg'l Transp. Auth.*, *Transportation Authority,* 837 F. Supp. 2d 834, 838-839 (N.D. Ill. 2011). As Plaintiff fails to plead sufficient facts from which an FMLA retaliation claim can be inferred, Count III should be dismissed.

### D.     COUNT IV FOR FMLA INTERFERENCE SHOULD BE DISMISSED AS PLAINTIFF FAILS TO STATE A VALID CAUSE OF ACTION.

In Count IV, Plaintiff repeats her retaliation claim titled as an inference claim. Plaintiff alleges essentially the same allegations in support of both her retaliation and inference claim, and

---

[14] Plaintiff asserts four inconsistent allegations surrounding a purported adverse action: (1) that she was terminated because "she insisted to her Defendant employer" (not specified which) "that they were subject to the laws contained in the FMLA; (2) that "[a]fter she requested a leave of absence, Plaintiff was fired"; (3) that she was terminated "during her leave of absence"; and (4) that "Defendants failed to provide Plaintiff with an equivalent job following her leave" (ECF No. 32 ¶¶ 1, 141-143).

as such they are duplicative and should be dismissed. In addition, to state a cause of action for FMLA interference, a plaintiff must plead that: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. *Sahlhoff v. Gurley-Leep Automotive Mgt. Corp.*, 136 F. Supp. 3d 1003, 1005 (N.D. Ind. 2015). Plaintiff fails to plead any facts showing any of these elements—rather, Plaintiff states conclusory allegations that merely repeat the elements of an FMLA interference claim. ECF No. 32 ¶¶149-153. Further, Plaintiff's allegations are inconsistent as to what she alleges she was actually denied. For example, Plaintiff alleges that she was "fired after she attempted to and/or exercised her right to FMLA leave," that "Defendants refused to grant or accept plaintiff's request [*sic*] FMLA leave," and that Defendants also "refused to provide Plaintiff an equivalent job **following** her FMLA." ECF No. 32 ¶¶ 153-158 (emphasis added) (*cf.* ECF No. 32 ¶¶ 1, 141-143). Even giving Plaintiff the benefit of the doubt that she was entitled to FMLA leave and that McHenry somehow denied her "right to FMLA leave" (ECF No. 32 ¶ 153), Plaintiff fails to plead sufficient facts from which an interference claim can be inferred. In fact, Plaintiff pleads that "[t]he location of Plaintiff's management responsibilities could be changed by Defendants at any time" (ECF No. 32 ¶20, 22)—pleading herself out of court on any claim of a failure to return to an equivalent job based on allegations of changing her location whether be alleged retaliation or interference (ECF No. 32 ¶54, 143, 158). Thus, Count IV should be dismissed.

### E. THE COURT SHOULD STRIKE PLAINTIFF'S DEMAND FOR PUNITIVE AND EMOTIONAL DISTRESS DAMAGES.

Plaintiff cannot be permitted to circumvent the limitations of the FMLA by attempting to seek emotional distress damages under the common law for an alleged violation of the FMLA, as

emotional distress damages are not available under the FMLA. The express language of the FMLA identifies the remedies available in private causes of action but makes no mention of emotional distress damages. *See* 29 C.F.R. § 825.400. Courts within the Seventh Circuit have previously recognized that the FMLA does not provide for punitive damages or emotional distress damages. *See e.g.*, *Bynum v. Bandza*, 2021 WL 6102525, *5-6 (C.D. Ill. Nov. 5, 2021). Similarly, Plaintiff cannot circumvent wage and hour laws—none of which provide for emotional distress damages— by improperly pleading a common law claim for "benefits" under the IWPCA. Thus, Counts I and II (seeking punitive and other damages) should be dismissed on this additional basis, as should any prayer for relief seeking such damages pursuant to the FMLA in Counts III and IV.

Lastly, because Plaintiff fails to state a valid claim in Counts I, II, III, or IV, as outlined above, Plaintiff's class allegations/claims must also be dismissed. *See Milam v. Selene Finance, LP,* N2024 U.S. Dist. LEXIS 126870, at *18 (N.D. Ill. July 18, 2024).

**WHEREFORE**, Defendant **MCHENRY DONUTS, INC.** respectfully requests that the Court enter an Order dismissing Plaintiff's Amended Complaint in its entirety and awarding any such other relief to Defendant as justice requires.

Dated: November 25, 2024                    Respectfully submitted,

                                            **MCHENRY DONUTS, INC.**

                                            By:     */s/ Stephanie Dinkel*
                                                    Stephanie M. Dinkel, Esq.
                                                    KOEHLER DINKEL LLC
                                                    900 S. Frontage Rd., Suite 300
                                                    Woodridge, Illinois 60517
                                                    Phone: (630) 505-9939
                                                    Email: sdinkel@kdllclaw.com

                                            **ATTORNEYS FOR DEFENDANT**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on November 25, 2024, she electronically filed the foregoing **DEFENDANT MCHENRY DONUTS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(4) AND 12(b)(5) AND ADDITIONALLY AND ALTERNATIVELY 12(b)(6)** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

> Kent D. Sinson
> SINSON LAW GROUP, LLC
> 100 N. LaSalle Street, Suite 1100
> Chicago, Illinois 60602
> Phone: (312) 332-2107
> Email: kent@sinsonlawgroup.com

By:     */s/ Stephanie M. Dinkel*
        Stephanie M. Dinkel, Esq.
        KOEHLER DINKEL, LLC
        900 S. Frontage Road, Suite 300
        Woodridge, Illinois 60517
        Phone: (630) 505-9939
        E-mail: sdinkel@kdllclaw.com