UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIANNA CASTELLI,<br>      Plaintiff<br><br>   v.<br><br>JSN NETWORK, INC., and MCHENRY DONUTS, INC., *d/b/a Dunkin' Donuts/Baskin Robbins*,<br>      Defendants | No. 24 CV 04574<br><br>Judge Jeremy C. Daniel |

## ORDER

Defendant McHenry Donuts, Inc.'s Motion to Dismiss [42] is granted because it has not been properly served. The plaintiff is granted until March 14, 2025, to effect service of process on Defendant McHenry Donuts. Defendant JSN Network, Inc.'s motion to dismiss is granted as to Count I and the Illinois common law claims in Count II, and otherwise denied. Defendant JSN Network shall answer the surviving claims by February 24, 2025. The February 4, 2025, status hearing is stricken.

## STATEMENT

The plaintiff brings this putative class action against her former employers for violations of state and federal employment law, and for retaliation. (R. 32 (First Amended Complaint or "FAC" at ¶¶ 1–3.)[1] She alleges that defendant JSN Networks, Inc. ("JSN") owns and operates a series of subsidiary corporations, including defendant McHenry Donuts, Inc., ("McHenry"). (*Id.* ¶¶ 8–13.) McHenry, and each of JSN's other subsidiaries, each in turn operates a Dunkin' Donuts / Baskin Robbins restaurant. (*Id.*) The plaintiff alleges that JSN structured itself this way in a deliberate attempt to avoid federal and state employment law. (*Id.* ¶ 12.)

The plaintiff alleges she worked as a manager at the restaurant operated by McHenry, under a contract she signed with JSN. (*Id.* ¶¶ 19–21.) She alleges that she was denied various employment benefits that the defendants were obligated to provide. (*Id.* ¶¶ 57–62.) According to the plaintiff, she was contractually entitled to six days of "personal/sick/holiday" time and six vacation days per year. (*Id.* ¶ 23.) She alleges her unused leave was not paid out after she was fired. (*Id.* ¶ 117). She further

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

alleges the defendants failed to offer her retirement benefits and refused her Family Medical Leave Act ("FMLA") leave, contrary to statute. (*Id.* ¶¶ 57–62.) She also states that JSN and McHenry's position is that their employees are not eligible for FMLA benefits. (*Id.* ¶¶ 29–30)

On March 18, 2024, the plaintiff sent an email to JSN requesting leave to care for her child. (*Id.* ¶¶ 35–36.) The plaintiff asserts this email was a request for leave covered by the FMLA. (*Id.* ¶ 38.) The day after the plaintiff sent her email, the defendants responded and allegedly told her that she "could not be" at the McHenry restaurant or use her employee discount. (*Id.* ¶¶ 39–40.) Approximately two weeks later, JSN employee Curt Pedro allegedly informed the plaintiff that she was being transferred to a different store, and about a week after that informed the plaintiff that she was being assigned to a location open 24 hours a day. (*Id.* ¶¶ 42–47, 51.) The plaintiff asserts that McHenry does not operate such a store. (*Id.* ¶ 49.) When the plaintiff stated her childcare obligations meant she could not work at a 24-hour store, she was then fired. (*Id.* ¶ 48, 50.) She alleges that she was not paid for her earned but unused time off after she was fired. (*Id.* ¶ 117.)

The plaintiff asserts four claims and a class allegation. She alleges that the defendants fired her in retaliation for asserting her rights under federal and state labor law, in violation of Illinois common law (Count I), that the failure to pay her for unused leave violates the Illinois Wage Payment and Collection Act ("IWPCA"), and alleges she was fired for asserting her rights under that statute as well (Count II). (*Id.* ¶¶ 80–130.) She further alleges that the defendants interfered with her attempt to take FMLA leave (Count VI) in violation of 28 U.S.C. § 2615(a)(2) and fired her in retaliation for seeking FMLA leave in violation of 28 U.S.C. § 2615(a)(2) (Count III). (*Id.* ¶¶ 131–58.) She also brings putative class claims on behalf of all employees of the defendants who were not paid out their accrued leave when terminated, were not offered a retirement plan, or were denied FMLA leave. (*Id.* ¶¶ 63–73.)

JSN and McHenry separately move to dismiss all of plaintiff's claims on the same grounds. (*Compare* R. 36 at 3–14 *with* R. 43 at 14–22.) The defendants also seek to strike the plaintiff's request for emotional distress damages and her class allegations (R. 36 at 14.) McHenry further moves to dismiss because it has not been properly served. (R. 43 at 4.)

## Service of Process on McHenry

McHenry moves to dismiss under Federal Rules of Civil Procedure 12(b)(4) and (5) because it asserts it has not been properly served. (*Id.*) According to McHenry, the plaintiff served an individual named Ashir Aziz, who is not authorized to accept service on behalf of McHenry. (R. 43 at 10; R. 43-1.) The plaintiff does not contest that Mr. Aziz cannot accept service on behalf of McHenry (R. 50 at 7–8.) Instead, the plaintiff requests additional time to effect service, as allowed by Rule 4(m). (*Id.*)

2

Rule 4(m) requires service of process within 90 days after the complaint is filed. Fed. R. Civ. P. 4(m). If the plaintiff has not timely served the defendant, the Court has three options. It must either (1) dismiss the lawsuit without prejudice, (2) order the plaintiff to serve the defendant by a deadline, or, (3) if "the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* In considering an extension under Rule 4(m) there are no fixed criteria the Court must consider, but the following is an partial list of permissible considerations: harm to defendant's ability to defend, receipt of actual notice, expiration of statute of limitations, evasion of service, admission of liability, windfall to defendant, actual notice and eventual service, the plaintiff's diligence in serving and seeking extensions of time to serve. *Cardenas v. City of Chicago*, 646 F.3d 1001, 1006 (7th Cir. 2011).

The facts surrounding service of process are disputed, but as near as the Court can tell, the following occurred: The complaint in this lawsuit was filed on June 3, 2024. (R. 1.) On June 25, 2024, the defendants' original counsel attempted to send the plaintiff's counsel waivers of service for both defendants, but either inadvertently only sent a waiver for JSN, or the packet from plaintiff's counsel requesting waiver of service of process only included the forms for JSN. (*Compare* R. 50-1 at 4 (from original defense counsel: "Please see the attached Waiver of Service on behalf of both defendants") *with* R. 43-2 at 7 (from current defense counsel: "there was no waiver of service in the packet for McHenry Donuts").) Current defense counsel, Stephanie Dinkel, took over the case in August and offered to accept a waiver of service on behalf of McHenry. (R. 50 at 4.) Rather than provide the waiver for Ms. Dinkel to sign, plaintiff's counsel asserted a waiver had been sent to McHenry. (*Id.* at 4–5.) Ms. Dinkel disputes McHenry ever received such a waiver. (*Id.*)

In any event, plaintiff's counsel decided to serve McHenry. (*Id.*) However, due to a miscommunication with counsel's process server, service was not attempted until November 4, 2024. (R. 50 at 5–6.) Service was first attempted at the address provided by McHenry for its registered agent, Suresh Patel. Mr. Patel was not present, and so service was attempted on Mr. Aziz. (*Id.* at 6.) Next, the process server attempted to serve Mr. Patel at his home, provided as an alternative address in McHenry's corporate registration. (*Id.*) Yet the process server was informed by the current owners that they bought the house from Mr. Patel three years earlier. (*Id.*) Finally, service was attempted four times at the principal address of McHenry, but to no avail. (*Id.*) According to the process server, the address "is a commercial building, and the unit door has remained locked, lights have been on, there have been cars parked in the lot, it appears to be occupied, JSN is printed on the unit door, but no one comes to the door when I have knocked repeatedly and there is no bell/ intercom system available." (R. 50-1 at 24.)

Returning to the Rule 4(m) factors, the Court concludes there is blame aplenty to go around. Plaintiff's counsel has certainly not been diligent in effecting service. He never followed up on Ms. Dinkel's offer to accept a waiver for McHenry. Then, he delayed from August to November in attempting service. Yet, McHenry must also

3

shoulder some of the blame. Mr. Patel has not kept his address current on McHenry's corporate records. Furthermore, McHenry's principal address appears to be inaccessible for service of process purposes.

In these circumstances, the Court will exercise its discretion to give the plaintiff one more chance at serving McHenry, obtaining a waiver of service, or permission for alternative service. Service of process on McHenry, or its equivalent, shall be completed by March 14, 2025.

### JSN's Motion to Dismiss

JSN moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). To overcome a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raises the right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *In re Abbott Labs. Derivative S'holder Litig.*, 325 F.3d 795, 803 (7th Cir. 2003).

### Count I – Retaliatory Discharge

JSN moves to dismiss Count I of the plaintiff's complaint, which asserts an Illinois state law claim for retaliatory discharge. (FAC ¶¶ 80–109.) Illinois law retaliation claims require that (1) the plaintiff was discharged (2) in retaliation for her activities and (3) "the discharge violate[d] a clear mandate of public policy." *Teruggi v. CIT Grp./Cap. Fin., Inc.*, 709 F.3d 654, 661 (7th Cir. 2013). The plaintiff alleges that she was fired for asserting her rights under both Illinois and federal employment law. (FAC ¶ 102.) Specifically, she asserts she was fired after complaining about JSN's failure to provide retirement benefits, and otherwise "demand[ing] that all [JSN] employees, including plaintiff, be afforded all employment rights under Illinois and federal labor laws." (*Id.* ¶¶ 59, 99) JSN argues that, under Illinois law, these concerns are insufficient to plead a violation of a clear mandate of public policy. (R. 36 at 4.)

As a Federal Court hearing a state law claim, this Court is bound by the decisions of the Illinois Supreme Court.[2] *Cozzi Iron & Metal, Inc. v. U.S. Off. Equip., Inc.*, 250 F.3d 570, 576 (7th Cir. 2001). The Illinois Supreme Court has recognized "retaliatory discharge actions" in "two settings:" firing an employee for filing a claim under the Illinois Workers Compensation Act ("IWCA") or for "whistleblowing" on illegal conduct. *Michael v. Precision All. Grp., LLC*, 21 N.E.3d 1183, 1188 (Ill. 2014). Further

---

[2] The Court may exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C.§ 1367.

4

guidance from the Illinois Supreme Court includes that "a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878–79 (Ill. 1981). And the tort has not been recognized where other safeguards and remedies exist. *See Jacobson v. Knepper & Moga, P.C.*, 706 N.E.2d 491, 494 (Ill. 1998) (holding a licensed attorney could not sue "for retaliatory discharge because the ethical obligations imposed by the Rules of Professional Conduct provide adequate safeguards to the public policy implicated in [the] case.")

It is not entirely clear what "rights under both Illinois and Federal employment law" the plaintiff demanded JSN to respect. (*See* FAC ¶ 99.) The FAC identifies three statutory provisions the plaintiff alleges JSN violates, and the Court, reading the complaint in a light most favorable to the plaintiff, will assume that these are the source of the plaintiff's complaints. These are the FMLA, "Section 510 of [the Employee Retirement Income Security Act, 29 U.S.C.A. § 1001 *et seq.*, ("ERISA")]," and Illinois Secure Choice Savings Program Act, 820 ILCS 80, *et seq.* ("ISCSPA"). (FAC ¶¶ 1, 62, 68.) A termination for reporting a violation of these statues does not give rise to an Illinois state law claim for retaliatory discharge.

Starting with the FMLA, courts in this district, following Illinois Supreme Court guidance, have consistently concluded that retaliatory discharge charges cannot be brought based on an FMLA violation. *See Smith v. MGM Resorts Int'l*, No. 16 CV 07215, 2016 WL 7049062, at *5 (N.D. Ill. Dec. 5, 2016) (collecting cases). The FMLA does not implicate the sort of rights, duties, and responsibilities core to a retaliatory discharge action. *Id*. And, as the plaintiff demonstrates, FMLA violations create causes of action. (*See* FAC ¶¶ 131–58 (asserting retaliation and interference claims under the FMLA, 29 U.S.C. § 2615(a)(l)–(2).)

For much the same reasons, ERISA also does not provide grounds for a retaliatory discharge action. Like the FMLA, ERISA concerns employment and benefits regulations, which are not the core rights, duties and responsibilities protected by the tort of retaliatory discharge. *See Smith*, 2016 WL 7049062, at *5. Furthermore, ERISA contains a private right of action, 29 U.S.C. § 1132, and prohibitions on interference and retaliation, *id.*, § 1140. Accordingly, there is no need for a separate state law tort to vindicate ERISA or safeguard employees. *See Jacobson* 706 N.E.2d at 493 (presence of alternative remedies or safeguards renders the retaliation tort unnecessary).

Similar logic governs the plaintiff's claim in connection with the ISCSPA, a mandatory retirement savings program. *See* 820 ILCS 80/10. Regulation of employee benefits do not give rise to retaliatory discharge claims. And, violators of ISCSPA are subject to fines, 820 ILCS 80/85, removing the need for a common law tort to safeguard the public.

Based on the foregoing, Count I of the FAC is dismissed.

### Count II – Illinois Wage Payment and Collection Act

Count II alleges violations of, and retaliation under, the IWPCA, alongside a common law retaliatory discharge claim. (FAC ¶¶ 110–30.) The plaintiff contends that JSN failed to pay out unused sick, vacation, holiday, or personal time (collectively, "leave") at the end of her employment with JSN. (*Id.* ¶ 117.) She also alleges the company forced employees to use leave if they were not scheduled for full-time hours and failed to allow leave to roll-over from year to year. (*Id.* ¶¶ 118–19.) The plaintiff further asserts that she complained about JSN's non-compliance with the IWPCA and was fired in retaliation. (*Id.* ¶¶ 114–15, 121, 123.) JSN argues that the plaintiff failed to state a claim for retaliation under the IWPCA or Illinois common law. (R. 36 at 8.)

Starting with the common law claim, the Court agrees with JSN that the plaintiff has not made out a claim for retaliatory discharge. As discussed above, such claims must "strike at the heart of a citizen's social rights, duties, and responsibilities." *Palmateer*, 421 N.E.2d at 878–79. Laws and regulations concerning employee pay and benefits do not meet this standard. *See Smith*, 2016 WL 7049062, at *5. And the IWPCA contains its own cause of action for retaliatory firings, 820 ILCS 115/14(c), which the plaintiff makes full use of here. (FAC ¶¶ 110–30.) As such, the plaintiff cannot bring a claim for common law retaliation (or retaliatory discharge) alleging she was fired for reporting violations of the IWPCA.

Turning next to the statutory retaliation claims, here JSN argues that the plaintiff fails to identify any specific action she took in complaining about JSN's non-compliance with the IWPCA and fails to connect any such complaint to her termination. (R. 36 at 12.) The plaintiff argues that she has pled every element of an IWPCA retaliation claim because she pled that (1) JSN violated the IWPCA by not paying out unused leave at the end of employment, forcing employees to take leave, and not allowing leave to roll-over from year to year, (2) she complained that these policies violated the IWPCA, and (3) she was fired for making this complaint. (R. 49 at 6–7.) The Court agrees with the plaintiff. At this procedural stage, the plaintiff need only "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Here, she has done that. The Court will not dismiss her statutory retaliation claim.

### Counts III and IV– FMLA Claims

JSN also moves to dismiss the plaintiff's FMLA claims brought as Counts III and IV. Here, the plaintiff alleges that she was fired because she requested leave to care for her child. (FAC ¶¶ 33–50.) She alleges this termination constitutes either retaliation for seeking to use FMLA leave, (*id.* ¶ 142), or as an attempt to stop her from taking leave, (*id.* ¶¶ 153–58.) Both allegations constitute violations of the FMLA. 29 U.S.C.

§ 2615(a)(1)-(2). JSN argues that the plaintiff failed to allege "any facts showing any of [the] elements" of the FMLA claims, and failed to allege adequate facts to show her termination was "causally connected" to her FMLA request. (R. 36 at 13–14.) The Court disagrees.

A claim for FMLA interference requires pleading: "(1) [the plaintiff] was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Pagel v. TIN Inc.*, 695 F.3d 622, 627 (7th Cir. 2012). Here, the plaintiff alleges that JSN is covered by the FMLA, that she was eligible for its protections, that she qualified for and provided notice of her intent to take leave to care for her child under the FMLA, and that she was denied this leave. (FAC ¶¶ 26–50.) Therefore, she has adequately pled her FMLA interference claim to survive a motion to dismiss.

A claim for FMLA retaliation requires pleading "(1) [the plaintiff] engaged in a protected activity; (2) [her] employer took an adverse employment action against [her]; and (3) there is a causal connection between the protected activity and the adverse employment action." *Pagel*, 695 F.3d at 631. Taking leave under the FMLA is a protected activity. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 633 (7th Cir. 2009). Here, the plaintiff alleges that she requested leave and JSN responded with reassignments to new, possibly non-existent stores, before terminating her employment. (FAC ¶¶ 34–50.) These are adequate allegations for the Court to draw an inference of a causal connection between the plaintiff's request and termination for her retaliation claim to survive a motion to dismiss. *See Pagel*, 695 F.3d at 631 (can show causal connection by a "a convincing mosaic of circumstantial evidence").

Accordingly, the Court will not dismiss the plaintiff's claims under the FMLA.

**Emotional Distress Damages**

JSN moves to strike the plaintiff's request for emotional distress damages. (R. 36 at 14.) In response, the plaintiff represents that she is only seeking such damages for her state law tort claims for retaliatory discharge. (R. 49 at 11.) Because the Court dismissed those claims, there is no need to separately strike the plaintiff's request for these damages.

7

**Class Allegations**

JSN moves to dismiss the plaintiff's class allegations "because Plaintiff fails to state a valid claim in Counts I, II, III, or IV . . . Plaintiff's class allegations/claims must also be dismissed." (R. 36 at 15.) But the Court did not dismiss all of the plaintiff's claims. Because JSN did not set forth any other grounds for dismissal of the class allegations, the Court will not dismiss the plaintiff's class allegations.

Date: February 3, 2025

JEREMY C. DANIEL
United States District Judge