**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| BRIANNA CASTELLI, Individually and as Class Representative | |
| Plaintiff, | Case No. 1:24-cv-04574 |
| v. | |
| JSN NETWORK, INC. and MCHENRY DONUTS, INC. D/B/A DUNKIN' DONUTS AND BASKIN ROBBINS, | Honorable Heather K. McShain, Judge. |
| Defendant. | |

**PLAINTIFF'S MOTION TO DISQUALITY ATTORNEY STEPHANIE M. DINKEL FROM REPRESENTATION OF CASSIDY STARK AND FOR ENTRY OF A PROTECTIVE ORDER CONCERNING THE REPRESENTATION OF FORMER EMPLOYEES AND NON-CONTROL GROUP EMPLOYEES**

NOW COMES the Plaintiff, BRIANNA CASTELLI, by and through her attorney, Kent D. Sinson of the Sinson Law Group, and in support of Plaintiff's Motion to Disqualify Attorney Stephanie M. Dinkel from Representation of Cassidy Stark and for entry of a Protective Order Concerning the Representation of Former Employees and Non-control Group Employees, states as follows:

**Background Facts**

1.      It is believed that Cassidy Stark was a human resources employee for the Defendant JSN Network, Inc.

2.      On February 25, 2025, Plaintiff's counsel noticed up Ms. Stark's deposition in this matter for March 31, 2025.

3.      On February 27, 2025, Attorney Stephanie M. Dinkel emailed counsel stating, "I

will be out of the country on this date and ask that you please reschedule." Plaintiff replied on February 27, 2025, by stating, "When do you leave for your trip? We will get this done before you leave."

4.      On March 4, 2025, Ms. Dinkel responded, "I will be representing Ms. Stark for the purpose of her deposition." "As I previously stated, I am out of the country on March 31 with my family." "I will be out during the weeks of March 24 and March 31." Ms. Dinkel indicated that she spoke to Ms. Stark about scheduling and wants to present Ms. Stark for her deposition on April 16, 18, 22, or 23.

5.      At the discovery depositions and at trial, Plaintiff will seek to explore conversations that this witness had with the attorneys for JSN Network Inc. and McHenry Donuts Inc. There is no indication that Ms. Stark ever paid any money for this alleged representation. Stephaine Dinkel claims to represent Cassidy Stark at the deposition, but never filed an appearance on behalf of the witness. No lawyer ever filed an appearance on behalf of any JSN Network Inc. or McHenry Donuts Inc. former employees.

## Former Employees

6.      The former employees of JSN Network Inc. and McHenry Donuts Inc. are not parties to the litigation and there is no chance that they will be subject to any liability. For JSN Network Inc. and McHenry Donuts Inc.'s counsel to solicit these witnesses as clients and thereby gain an obvious and substantial tactical advantage in this litigation, is an impropriety that clearly would affect the public's view of the judicial system as it undercuts the integrity of these court proceedings. *Rivera v. Lutheran Med. Center*, 866 NYS.2d 520 (2008).

7.      As the Court stated in *Clark Equip. Co. v. Lift Mfg. Co.*, 1985 U.S. Dist. LEXIS 15457:

> Former employees are not the client. They share no identity of interest in the outcome of the litigation. Their willingness to provide information is unrelated to the directions of their former corporate superiors, and they have no duty to their former employer to provide such information. It is virtually impossible to distinguish the position of a former employee from any other third party who might have pertinent information about one or more corporate parties to a lawsuit

8.      In *Newman v. Highland School Dist. No. 203*, 381 P.3d 1188 (2016), the Court

stated:

> …But everything changes when employment ends. When the employer-employee relationship terminates, this generally terminates the agency relationship. As a result, the former employee can no longer bind the corporation and no longer owes duties of loyalty, obedience, and confidentiality to the corporation. See *Id.* & cmt. d. Without an ongoing obligation between the former employee and employer that gives rise to a principal-agent relationship, a former employee is no different from other third-party fact witnesses to a lawsuit, who may be freely interviewed by either party. See *Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303, 305 (E.D. Mich. 2000).

### JSN Network / McHenry Donuts Has the Burden of Proof

9.      One who claims an attorney client privilege has the burden of showing the facts

which give rise to privilege. Cox v. Yellow Cab Co., 61 Ill.2d 416, 419-20 (1975), Klaine v. S. Ill.

Hosp. Serv., 2016 IL 118217 ¶15. A mere assertion that the matter is confidential and privileged

will not suffice. Id. A party claiming a privilege cannot rest on a mere assertion of the privilege

because a simple assertion of the privilege would then automatically establish its validity, which

is in violation of the well-recognized rule that no claimant of a testimonial privilege can be the

final arbiter of his own claim. Commonwealth v. Reese, 31 A 3rd 708 Privileges like the attorney

client privilege is designed to protect interests outside the truth seeking process and as a result

should be strictly construed as exceptions to the general duty to disclose. Klaine at ¶15.

10.     To be entitled to assert attorney client privilege over a statement one must show

(1) the statement originated in confidence that it would not be disclosed; (2) that it was made to

an attorney acting in his legal capacity for the purpose of securing legal advice or services; and

(3) that it remained confidential. *Pietro v. Marriott Senior Living Servs*., 348 Ill.App.3rd 541

(2004) In this case there is no evidence of any of these requirements.

### Rules of Professional Conduct

11.     Under the Illinois Rules of Professional Conduct 7.1, it is unethical for counsel

for JSN Network Inc. and McHenry Donuts Inc. to approach a former employee and offer to be

their free attorney. Illinois Solicitation Rules bar defense counsel from approaching Cassidy

Stark or any of these witnesses for representation.

12.     The Illinois Rules of Professional Conduct circumscribe the circumstances in

which corporate litigation counsel may represent non-control group employees. The ethical rules

apply to all attorneys, including a corporation's attorney who claims to represent the corporation's

non- control group employee-witnesses at their depositions. "It is professional misconduct for a

lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct.

13.     Rule 7.3 addresses solicitation of clients:

> Rule 7.3(a) A lawyer shall not by in-person, live telephone or real-time electronic contact solicit professional employment when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain, unless the person contacted:
> (1) Is a lawyer; or
> (2) Has a family, close personal, or prior professional relationship with the lawyer.
>   (b) A lawyer shall not solicit professional employment by written, recorded or electronic communication or by in-person, telephone or real-time electronic contact even when not otherwise prohibited by paragraph (a), if; (1) the target of the solicitation has made known to the lawyer a desire not to be solicited by the lawyer; or
>   (2) the solicitation involves coercion, duress or harassment.

14.     The Rule is not limited to personal injury "ambulance chasers" but also applies to

the attorney who, to further his representation of a corporate client, solicits the representation of current or former employees who become witnesses. [T]he fact that a lawyer already represents one client in some matter does not generally give the lawyer license to solicit the representation of other clients in the same matter." George M. Cohen, *Beyond the No-Contact Rule: Ex Parte Contact By Lawyers With Nonclients*, 87 Tul. L. Rev. 1197, 1242 (2013) Significantly, the phrase "has a family, close personal, or prior professional relationship with the lawyer" does **not** include "control of testimony potentially damaging to my corporate client" or "because my corporate client will pay me to represent its current and former employees." The phrase "prior professional relationship" is qualified not by "with the lawyer's client" but by "*with the lawyer*." Thus, soliciting representation of non-control group employees and of former employees violates paragraph (a) of the Rule.

15.     Rule 7.3(b)(2) Prohibits coercion in representation. Illinois Rule 7.3(b)(2) prohibits "coercion, duress or harassment." Rule 7.3(b) applies "*even when not otherwise prohibited by paragraph (a)…*" Substantial authority supports the proposition that soliciting legal employment of a client's employees necessarily involves coercion. *Hendley v. Center of Georgia Co.*, 609 F. 2d 1146, 1151 (5th Cir. 1980) The Northern District of Mississippi applied a similar rule to find that any solicitation which involves coercion, duress, or harassment within the meaning of Rule 7.3(b)(2) is prohibited. *Schwartz v. Welch*, 890 F. Supp. 565, 581 (1995) One New York decision has construed an identical ethical rule not only to prohibit such solicitations but also to require the disqualification of the law firm that made them. *Rivera v. Lutheran Med. Ctr.*, 866 NYS 520, 527 (2008).

### Control Group

16.     The Illinois Supreme Court in *Consolidated Coal Co. v. Bucyrus-Erie Co.*, 89 Ill.

2d 103 (1982) adopted the control group test for corporate attorney-client privilege. The control group test 1) recognizes that parties inherently have unequal access to sources of proof and a broad corporate privilege could shield so much information from discovery that proof of necessary facts would be unnecessarily difficult; and 2) recognized that expanding the corporate attorney-client privilege beyond the control group would create a zone of silence that is antithetical to the broad principles of discovery. *Id.*

17.     Thus, to assert the attorney-client privilege for an employee, a corporation must show that the employee involved falls within the "control group." The "control group" includes those employees in top management who have the ability to make final decisions. It also includes employees with an advisory role to top management. An employee is in an advisory role to top management when: 1) management would not normally make a decision in the employee's particular area of expertise without the employee's opinion; and 2) that opinion does in fact form the basis of the final decision by those with actual authority. *Jenousek v. Slotky*, 2012 IL App (1st) 113432, ¶28, 908 N.E.2d 641, 652 (no reasonable expectation that communications made during dual representation would be kept confidential and therefore no privilege applied to those communications).  "[D]efendants could have had no reasonable expectation that communications made during the dual representation between defendants and Katten regarding BIG and the business of investing in delinquent debt accounts would be kept confidential. Accordingly, no privilege applied to those communications. *Janousek v. Slotky*, 2012 Ill.App (1st) 113432 ¶28

18.     Just because a corporation is sued does not automatically establish an attorney-client relationship between the attorneys for the corporation and all current employees of the corporation. There is not an automatic attorney-client relationship between the attorneys for the corporation and "every custodian, cafeteria worker, or receptionist." *University Patents, Inc. v.*

*Kligman*, 737 F. Supp. 325 (1990). A mere offer by the corporation's counsel to represent individual unsued employees does not create an attorney-client relationship. *Brown v. Saint Joseph County*, 148 F.R.D. 246 (1993). In fact, in Illinois the attorney-client relationship is only created between the corporation's counsel and the members of the control group of the corporation. *Miduesco-Paschen Joint Venture for the Viking Projects v. IMO Indust.*, 265 Ill. App.3d 654 (1994) citing *Consolidated Coal Co. v. Bucyrus-Erie Co.*, 89 Ill.2d 103 (1982).

19.     Since Cassidy Stark will not be an employee of JSN Network Inc. or McHenry Donuts Inc. at the time of her deposition, Stephanie Dinkel is not entitled to assert the attorney client privilege on the basis that Ms. Stark is part of JSN Network Inc. or McHenry Donuts Inc.'s Control Group. *Consolidated Coal Co. v. Bucyrus-Erie Co.*, 89 Ill.2d 103 (1982)

<u>**Coercion Assumed**</u>

20.     Whether the corporate defendant would actually retaliate against an employee for giving truthful testimony is irrelevant because coercion is inherit in the employer-employee relationship. *NLRB v. Tamper Inc.*, 522 F.2d 781, 787 (4th Cir. 1975) The fourths circuit was careful to explain:

> We do not question the good faith of the Company's attorney in conducting these interviews. There is no evidence that he actually intended to make those whom he interviewed feel compelled to answer his questions. However, we believe greater protection of employee rights was necessary and that evidence that the interviews were not truly voluntary cannot be ignored. *NLRD v. Tamper Inc.*, 522 F.2d 781, 787 (4th Cir. 1975)

21.     Thus, neither good faith nor innocent motive is a defense. The plain language of Rule 7.3(b)(2) does not require intent or even an overt act but only that the solicitation "*involve*" coercion. When a corporation's attorney seeks to become the employee-witness's attorney, coercion is necessarily "involved," even if it is only implied.

22.     Cross examination is a matter of right and an important aspect of due process.

*Millard Maintenance Service Co. v. Bernero*, 207 Ill. App. 3d 736 (1990).

23.    Illinois law guarantees that, regarding the substance of expert cross-examination, the opposing party "must be given the widest latitude during cross-examination to demonstrate any interest, bias, or motive of the expert witness to testify, and to test his accuracy, recollection and credibility." *Jackson v. Reid*, 402 Ill. App. 3d 215, 234 (2010).

24.    There is certainly something about these communications that JSN Network Inc. or McHenry Donuts Inc. wants to hide from the trier of fact. The jury has a right to know if JSN Network Inc. or McHenry Donuts Inc.'s counsel tried to influence to testimony of the JSN Network Inc. or McHenry Donuts Inc.'s former employees, by providing inaccurate information about the Plaintiff's allegations. Any promises or threats made by JSN Network Inc. or McHenry Donuts Inc.'s counsel would go to bias. A trial court cannot bar a lawyer from exploring a witness' potential bias including reasons for that potential bias. *People v. Bean*, 137 Ill. 2d 65, 96 (1990)

25.    Soliciting representation of current, non-control group, employees and of former employees warrants a finding that Defendant's counsel did not have a valid attorney-client relationship with these former and current employees and, therefore, any communications they had with counsel was a proper topic of cross-examination. Therefore, Plaintiff had the right to question these employees at least regarding the nature of their representation by Defendant's attorneys (e.g., whether such representation was provided for free) so as to demonstrate possible bias in their testimony to the jury.

**<u>Stephaine Dinkel's duel representation of JSN Network Inc. or McHenry Donuts Inc. and non-control group present employees and former employees warrants disqualification and warrants the Plaintiff's right to cross-examine former employees and non-control groups present employees about their communications with Stephanie Dinkel</u>**
**<u>Dual representation of the JSN Network Inc. or McHenry Donuts Inc. and lower level employee - present employees or former employees- creates a third party presence that waives the attorney client privilege</u>**

26.     The representation of the witness is separate from the representation of JSN Network or McHenry Donuts. The witness and the corporation are third parties whose presence destroys any privilege. "[D]efendants could have had no reasonable expectation that communications made during the dual representation between defendants and Katten regarding BIG and the business of investing in delinquent debt accounts would be kept confidential. Accordingly, no privilege applied to those communications. *Janousek v. Slotky*, 2012 Ill.App (1st) 113432 ¶28

### Aspgren v. Montgomery Ward

27.     In *Aspgren v. Montgomery Ward & Co., Inc.*, 1984 U.S. Dist. LEXIS 21892 the Northern District of Illinois held informing potential deponents that they may need counsel and that litigation defense counsel will represent them without charge constitutes improper solicitation because of the inherent coercion in such an arrangement. In *Aspgren*, defendant Montgomery Ward's in-house counsel suggested to former employees that they utilize the services of litigation counsel, Steptoe & Johnson, whose services would be provided at no cost to the deponents. The *Aspgren* decision applied the ethical rules to constrain this conduct:

> Ward attorneys may contact former employees before their depositions and explain that they can either go unrepresented or hire an attorney for the deposition. If no actual or potential conflict exists, counsel for Ward may explain that Ward can provide representation at the deposition only after the individual asks about hiring Steptoe. Once the employee asks about hiring Ward's counsel and asks about fees, the attorney may offer his service at no cost to the deponent. Counsel must explain that Ward will pay the fees. The court reiterates that Ward's counsel should explain the fee arrangement only after the deponent asks about fees. In the context of this suit, offering representation at no cost to the deponent before such a question surfaces is an invitation to the deponent to hire Ward's counsel. Such invitations go too far.

28.     *Aspen* elaborated that "[o]f course, Ward's counsel should also avoid

'recommending' in other ways that the deponents hire Steptoe. An objective presentation of the available alternatives is legitimate, but any comment that invites the deponent to hire Steptoe is improper." *Aspgren* concluded by ordering that:

> Attorneys who represent defendants shall refrain from telling third party deponents that the attorneys will represent them during their deposition until the deponent asks about hiring the attorneys. In addition, if the deponent asks about hiring counsel, the attorney will offer to represent the deponent at no cost to him or her only after the deponent asks about the fee arrangement, Once the witness inquiries about fees ,counsel should disclose whether defendants will pay for the representation. At each deposition, plaintiffs' counsel is entitled to ask questions about compliance with this order.

29.     The Northern District later clarified its order. *Aspgren v. Montgomery Ward & Co,* 1984 U.S. Dist. LEXIS 20927. The court explained that:

> Ward asserts that preventing Steptoe from explaining the "free" option prevents deponents from making a decision based on the available options. This argument is the same as asserting that an attorney on the scene of an accident who explains contingency fees to an accident victim and accepts employment is merely allowing the victim to make an informed decision. Under the order, Steptoe explains that an attorney might be useful but that an attorney is not required. This is the information that the deponent needs to decide whether he is going to hire an attorney. Explanations about "free" options only create pressure to accept Steptoe's help. Once the deponent decides, however, that he might hire an attorney, then further explanation is helpful. The order provides that information in an orderly and non-coercive manner.
>
> Ward insinuates that the order requires counsel to imply over the telephone that Steptoe is unable to represent the deponents. The court allowed Steptoe to explain the two alternatives that the deponents face; 1) go unrepresented or 2) hire an attorney.
>
> Obviously, the second option includes hiring Steptoe. If counsel describes the third option, which is only a subset of the second, the deponent faces dangerous coercive influences.

30.     *Aspgren* then addressed the issue that the defendant pay for independent counsel chosen by the deponents:

Although Ward will still pay the bill, it will have no other contact with the attorney, and the attorney will have no duty to prevent Ward's interests. Therefore, if Steptoe explains to a deponent that Ward is willing to finance an attorney for the deposition, Steptoe should elaborate that the deponent can hire, at Ward's expense, an acceptable independent attorney. If the deponent wants to pay the attorney, he remains free to do so.

As the court explained at the hearing, it agrees that, if a deponent asks about hiring Steptoe, counsel should explain that Ward will pay the bill. As explained above, counsel should also inform the deponents that ask about hiring Steptoe that Ward will provide independent third party counsel. The independent counsel option should be mentioned, however, only after the deponent asks about fees or asks about hiring Steptoe. Explaining the option spontaneously in the context of the two alternatives of going unrepresented or hiring an attorney will exert the same coercion described in the original order.

31.     The ethical rules limit litigation defense counsel's soliciting representation of lower-level corporate employees, whether directly or indirectly.

32.     Soliciting representation of current, non-control group, employees and of former employees warrants Stephaine M. Dinkel's disqualification and warrants a finding by this Court that Stephaine M. Dinkel did not have a valid attorney-client relationship with Ms. Stark and, therefore, any communications Ms. Stark had with Stephaine M. Dinkel was a proper topic of cross-examination. Courts have the authority to disqualify the attorney and law firm for violating the Rule. Representation of non-party witnesses who have no stake in the outcome of the litigation should be carefully scrutinized by the courts because the only real purpose of such representation is to gain an impermissible tactical advantage. *Grech v. HRC Corp*., 13 NYS 3rd 822, 824-25 (2015) To determine whether "pecuniary gain" was a motive, the court may need to examine the firm's billing records and client contracts. *Clark v. Am. Commerce National Bank*, 974 F. 2d 127, 129 (1992).

33.     In the *Aspgren* case, the Court set out certain parameters concerning the potential representation of former employees or of non control group employees. Plaintiff has prepared a Proposed

Protective Order recognizing the parameters of Ms. Dinkel's potential representation of former employees like Ms. Stark or current non control group employees. Plaintiff's Proposed Protective Order is attached to this motion as **Exhibit A**.

WHEREFORE, the Plaintiff, BRIANNA CASTELLI, respectfully requests Stephaine Dinkel be disqualified from the representation of any non-control group employees and any former employees of JSN Network Inc. and McHenry Donuts Inc. including but not limited to Cassidy Stark

WHEREFORE, the Plaintiff, BRIANNA CASTELLI, respectfully requests that this Court enter the protective order attached to this Motion as Exhibit A.

Dated: <u>March 10, 2025</u>                    Respectfully Submitted,

<u>/s:/ *Kent D. Sinson*            </u>
Kent D. Sinson, Attorney for Defendant

Kent D. Sinson (ARDC No.: 6196953)
kent@sinsonlawgroup.com
SINSON LAW GROUP
100 N. LaSalle St., Suite 1100
Chicago, Illinois 60602
(312) 332-2107 / Phone
(312) 332-4508 / Facsimile

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that he has caused a copy of

the foregoing: **Plaintiff's Motion to Disqualify Attorney Stephanie M. Dinkel from**

**Representation of Cassidy Stark** to be filed with the Clerk of Court using the CM/ECF

system and served, by the electronic filing system, upon all attorneys of record, on this

10th day of March, 2025.

**<u>Attorney for JSN Network, Inc. and McHenry Donuts, Inc.</u>**
Stephani M. Dinkel                    sdinkel@kdllclaw.com
KOEHLER DINKEL LLC                    jlee@kdllclaw.com
900 S. Frontage Road, Ste 300         sgomez@kdllclaw.com
Woodridge, IL 60517                   svanek@kdllclaw.com
Office: (630) 505-9939
Cell: (312) 405-7179


SINSON LAW GROUP


/s:/ *Kent D. Sinson*
Kent D. Sinson, Attorney for Defendant



SINSON LAW GROUP
100 N. LaSalle St., Suite 1100
Chicago, Illinois 60602
(312) 332-2107 / Phone
(312) 332-4508 / Facsimile